IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| STEVEN LEONARD HUNT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 420-017 |
| | ) | |
| WARDEN KARL FORT, | ) | |
| | ) | |
| Respondent. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Washington State Prison in Davisboro, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. The Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

On July 29, 2015, a Chatham County grand jury indicted Petitioner for three counts of aggravated assault, one count of false imprisonment, two counts of influencing a witness, one count of simple assault, one count of battery, and one count of theft. (See doc. no. 13-3, p. 1.) Petitioner represented himself at trial, and the jury found him (1) guilty on two counts of aggravated assault, two counts of influencing a witness, one count of simple assault, and one count of theft; and (2) not guilty on one count of aggravated assault, false imprisonment, and battery. (See doc. no. 13-5, p. 371.) Petitioner was sentenced to thirty years without parole.

(Doc. no. 1, p. 1.)

Petitioner continued his *pro se* representation on appeal to the Georgia Court of Appeals, arguing:

(1)   the evidence was constitutionally insufficient;

(2)   the trial court erred in not quashing indictment number CR15-0129 when he was re-indicted and tried on indictment number CR15-1688;

(3)   indictment number CR15-0129 was a forged and fraudulent indictment;

(4)   the trial court violated his due process rights to confront his accusers when it refused to provide him with the addresses and phone numbers of the grand jurors;

(5)   indictment number CR15-1688 was not returned in open court;

(6)   he was improperly tried on indictment number CR15-0129;

(7)   the trial court erred in refusing to charge the jury on misdemeanor battery and simple assault as lesser included offenses of the aggravated assaults and by refusing to charge the jury on mistake of fact;

(8)   the trial court falsified the sentencing order;

(9)   the trial court erred in denying Petitioner's motion for disclosure of the names of the bailiffs and judges who handled his indictment;

(10)   he was prejudiced by two prior battery convictions listed in aggravation of punishment in the indictment, which were redacted from the indictment at trial;

(11)   the trial court erred by refusing to allow Petitioner to present evidence that the victim was a drug user;

(12)   the trial court erred by ruling that should Petitioner testify he would be impeached with prior convictions from more than 10 years ago;

(13)   the trial court erred by allowing the prosecutor in closing argument to compare Petitioner's charges to testimony given by the State's domestic

>
> violence expert; and,
>
> (14) the trial court's June 6, 2017, order erroneously held that the trial court lacked post-conviction jurisdiction to correct items added to and/or removed from the trial transcript.

(See doc. nos. 13-1, 13-2.) The Georgia Court of Appeals affirmed Petitioner's conviction on June 11, 2018 in Hunt v. State, No. A18A0372 (Ga. App. June 11, 2018) (unpublished); (doc. no. 13-1, p. 1.)

In its opinion, the Georgia Court of Appeals provided the following description of facts based on the evidence offered against Petitioner at trial:

> Count 1 of the indictment charged that on October 9, 2014 Hunt committed aggravated assault by repeatedly striking his live-in girlfriend (the victim) in the face and head with his fists. In support of this charge, the State produced testimony from the victim that, after they argued at a bar, Hunt punched her in the face and body with his closed fist over "a dozen times." The aggravated assault offense charged under count 3 concerned events that occurred later on October 9, 2014 after Hunt and the victim arrived home, and charged that Hunt strangled the victim when he placed both of his hands around her throat or neck and applied pressure to impede her breathing or circulation. In support of this charge, the State produced testimony from the victim that, at some point after they arrived home from the bar, Hunt put his hands around her neck and, while she tried to pry his hands away, choked her to the point that she could not breathe. On the same day, the victim reported the attacks to police who took photographs of her injuries. The photographs were admitted into evidence and showed extensive swelling, bruising and redness around the victim's eyes and mouth, and bruising with fingerprint impressions and redness around her neck.
> . . .
>
> Count 5 charged that, on or about October 22, 2014, Hunt knowingly used intimidation with the intent to influence the victim's testimony in his criminal case by calling the victim from jail, directing her to testify at his bond hearing, and telling her that he better not wake up in jail tomorrow "or there will be problems." The State presented evidence showing that, after Hunt was arrested, he made phone calls to the victim from the jail in which he pressured her to testify at his bond hearing (where the victim recanted the statements she made to the police), and told her (after bond had been set) that, if he had to spend

another night in jail, there was going to be a problem.  Count 9 charged that, on or about February 26, 2015, Hunt knowingly used intimidation to influence or prevent the victim's testimony in his criminal case by instructing her to have a sworn statement prepared claiming he was not the cause of the injuries she suffered on October 9, 2014.  The State presented evidence that on February 26, 2015 (after Hunt had been re-arrested for violating the conditions of his bond) the victim, acting at Hunt's direction, wrote a notarized letter recanting statements about her October 9, 2014 injuries and mailed the letter to the district attorney and the judge. . . .

Count 8 charged that Hunt committed the offense of theft by taking when he unlawfully took the victim's purse, which contained $1,700, with the intent to deprive the victim of said property.  In support of this charge, the State produced testimony from the victim that, on or about December 7, 2014, she and Hunt were staying together at a hotel room.  The victim said they went to a bar where they got into an argument during which Hunt grabbed her by the hair, knocked her head against a pole, and caused her to fall to the ground.  When bar patrons came to the victim's rescue, Hunt left the scene.  After police were called to the bar and the victim reported the incident, police escorted the victim to the hotel room to retrieve her belongings, but she discovered that her belongings (including her purse which contained credit cards and $1,700 cash) had been taken from the room occupied by her and Hunt.  The above evidence also supported Count 6, which charged that Hunt committed simple assault (family violence) when he placed the victim in reasonable apprehension of receiving a violent injury by grabbing the victim by the hair and dragging her.

Hunt, No. A18A0372, at 2-4; (doc. no. 13-1, pp. 2-4.)

The Georgia Supreme Court denied Petitioner's application for a writ of certiorari on February 14, 2019.  (Doc. no. 1, p. 2.)  Petitioner states he filed post-conviction motions in the Superior Court but does not claim to have filed a state habeas corpus petition, nor can any record of one be found.  (Id.)  Petitioner filed the above-captioned § 2254 petition on January 27, 2020, raising the following claims for relief:

(1)     The warrant for Petitioner's arrest was invalid;

(2)     The warrant for Petitioner's second arrest was invalid for lack of probable cause;

4

(3)     The indictment charging Petitioner did not arise from proper procedure;

(4)     The trial judge erroneously denied Petitioner the names and numbers of the Grand Jury members.

(5)     The prosecution unlawfully withheld medical records;

(6)     Petitioner is actually innocent of the first count of aggravated assault;

(7)     Petitioner is actually innocent of the second count of aggravated assault;

(8)     Petitioner is actually innocent of simple assault;

(9)     Petitioner is actually innocent of the first count of influencing a witness;

(10)     Count Nine of the indictment failed to put Petitioner on sufficient notice of the criminal charges;

(11)     The evidence at trial was insufficient to support the theft conviction; and

(12)     Petitioner received an improper trial since the jury was not sworn-in and not composed of his peers.

(Doc. no. 1.)

Respondent argues federal relief should be denied because the state court decision deserves deference and federal relief is not available for procedurally defaulted claims. (See doc. no. 12-1, pp. 2-3).

## II. STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419, 1702 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also

6

Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III. DISCUSSION

### A. Grounds Six, Seven, Eight, Nine, and Eleven Fail Because This Court Defers to the Correct Decision of the Georgia Court of Appeals that the Evidence Adduced at Trial Was Sufficient to Support the Convictions

In Grounds Six, Seven, Eight, Nine, and Eleven, Petitioner argues the evidence at trial was insufficient to convince a rational trier of fact beyond a reasonable doubt of Petitioner's guilt. (Doc. no. 1, pp. 20-23.) When Petitioner raised these sufficiency of the evidence arguments on direct appeal, the Georgia Court of Appeals summarized the evidence – as set forth in detail in Part I, *supra* – and found it sufficient to authorize a rational trier of fact to find Petitioner guilty beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307 (1979). See Hunt, No. A18A0372 at 5; (Doc. no. 13-1, pp. 4-5).

Petitioner does not assert his conviction is inconsistent with the ruling in Jackson, or otherwise explain how the Court of Appeals erred. In Jackson, the Supreme Court held that the Fourteenth Amendment Due Process Clause mandates no person shall be convicted unless the evidence is sufficient to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense. 443 U.S. at 316. Thus, the relevant question on review of a sufficiency of the evidence claim is whether "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct

unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Petitioner fails to show the state court's conclusion was an unreasonable application of Jackson. On direct appeal, the appellate court has a duty to view the evidence in the light most favorable to the verdict. Jackson, 443 U.S. at 319; Barela v. State, 517 S.E.2d 321, 323 (Ga. 1999) ("[T]he [appellate] Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence. Rather it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.") Moreover, as explained above, in these federal proceedings, factual determinations made by the state court are presumptively correct and must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Without substantive reference to any portion of the record, Petitioner makes the conclusory argument the evidence was insufficient to support his convictions, similar to his presentation on direct appeal. (Doc. no. 13-2.) Petitioner only points to his own construction of the evidence relied on by the State at trial in arguing the evidence is insufficient. (See doc. no. 1, pp. 20-23.) For example, Petitioner argues that it is more likely that the victim's injuries were caused by allergies, sleep deprivation, and a collision with Petitioner's car mirror. (Id. at 19-20.) Further, Petitioner asserts the evidence is inconsequential and insufficient even though the evidence includes testimony of the victim, photographs of the injuries taken by law enforcement, records of phone calls, and a notarized letter. (Id. at 20-23)

9

However, Petitioner has not shown the state court was objectively unreasonable in its determination the evidence at trial was clearly sufficient for a jury to find guilt beyond a reasonable doubt. It was the province of the jury to determine the credibility of witnesses, weigh the evidence, and resolve any conflicts or inconsistencies. See Vega v. State, 673 S.E.2d 223, 225 (Ga. 2009); see also Manuel v. State, 711 S.E.2d 676, 678 (Ga. 2011) (explaining testimony of one witness can establish a fact and lack of corroboration goes to weight of evidence and witness credibility, both issues within jury's purview). The record provides ample support for the jury verdict, and the related state court determination of sufficient evidence for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.

The Georgia Court of Appeals did not unreasonably apply Jackson. Petitioner's conclusory claim is inadequate to establish that the state court unreasonably applied Jackson or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Indeed, Petitioner has not presented evidence sufficient to rebut the presumptive correctness of the Georgia Court of Appeal's factual and legal determinations. Nor is he correct in arguing that an acquittal on one charge affects the validity of his conviction on another. The evidence at trial was sufficient for a jury to find guilt beyond a reasonable doubt. Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Grounds Six, Seven, Eight, Nine, and Eleven.

**B. Petitioner's Actual Innocence Claims Fail Because Freestanding Claims Do Not Exist and the Gateway to Revive Defaulted Claims is Irrelevant**

Petitioner appears to claim in the alternate that he is "actually innocent" of his convictions in Grounds Six, Seven, Eight, and Nine. (Doc. no. 1.) The actual innocence

10

gateway standard is demanding, and "in virtually every case, the allegation of actual innocence has been summarily rejected." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (citations omitted). "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (citations omitted).

The Eleventh Circuit recently reiterated there is no freestanding claim of actual innocence because "'[f]ederal courts are not forums in which to relitigate state trials.'" Raulerson v. Warden, 928 F.3d 987, 1004 (11th Cir. 2019) (quoting Herrera v. Collins, 506 U.S. 390, 401 (1993)). "It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since trial." Id. (citing Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002)). "[A]bsent an independent constitutional violation occurring in the underlying state criminal proceeding," Eleventh Circuit precedent forecloses habeas relief based on a claim of actual innocence. Id. (citations omitted).

Petitioner offers his interpretation of the evidence at trial and argues his innocence thereupon. (Doc. 1, pp. 20-24.) However, Petitioner has not presented any new evidence sufficient to prove actual innocence. Therefore, Petitioner's claims of actual innocence in the instant § 2254 petition are meritless.

### C. Petitioner Procedurally Defaulted Claims in Grounds One, Two, Five, Ten, and Twelve

#### 1. A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts." Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). The exhaustion requirement applies with equal force to all constitutional claims. See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992). "Ultimately, 'to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (citation omitted). Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available. McNair v.

12

Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005).

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court. First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on independent and adequate procedural grounds. "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment." Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests on "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim. Second, the state court decision must rest solidly on state law grounds, and may not be intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine. In other words, a state procedural rule cannot bar federal habeas review of a claim unless the rule is "firmly established and regularly followed."

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 562 U.S. 307, 311 (2011).

13

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, unless the petitioner either establishes the cause and prejudice or the fundamental miscarriage of justice exception, the failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1138-39 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1342 (11th Cir. 2009) (citing Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998)); Bailey v. Nagle, 172 F.3d 1299, 1303 (11th Cir. 1999). To determine whether a claim is procedurally barred in this way, the federal court must ask whether "it is clear from state law that any future attempts at exhaustion would be futile." See Bailey, 172 F.3d at 1305.

Simply put, if a claim has not been "fairly presented to the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) precludes state habeas review of any issue not preserved for collateral attack in a state court by timely objecting and raising the issue on appeal. See Devier v. Zant, 3 F.3d 1445, 1454-55 (11th Cir. 1993) (citing O.C.G.A. § 9-14-48(d) and upholding a finding of procedural default on numerous claims); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default, and in order to surmount the bar to a defaulted claim, one must meet the 'cause and prejudice' test.");

14

Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."). In addition, Georgia law prohibits the assertion of state habeas claims in any successive petition that could have been asserted in the original state habeas petition. O.C.G.A. § 9-14-51; Chambers v. Thompson, 150 F.3d 1324, 1327 (11th Cir. 1998) ("The Georgia statute restricting state habeas review of claims not presented in earlier state habeas petitions can and should be enforced in federal habeas proceedings against claims never presented in state court . . . .").

> **2. Petitioner's Claims in Grounds One, Two, Five, Ten, and Twelve Are Procedurally Defaulted**

In Grounds One, Two, Three, Five, Ten, and Twelve, Petitioner argues the warrants for his arrest were invalid, the procedure for his indictment was improper, the prosecutor wrongfully withheld medical record evidence, the indictment did not put Petitioner on sufficient notice of Count Nine, and the jury was not sworn-in or composed of his peers. (Doc. no. 1.) Respondent argues these claims are procedurally defaulted because Petitioner failed to raise these grounds at trial, on appeal, or in a state habeas court. (Doc. no. 12-1, pp. 11-12) (citing § O.C.G.A. 9-14-48(d); Faretta v. California, 422 U.S. 806, 834 n.46 (1975).)

Petitioner procedurally defaulted Grounds One, Two, Five, Ten, and Twelve because he did not raise them in his direct appeal and did not file a state habeas petition. Accordingly, the Court hereby finds Petitioner procedurally defaulted these grounds.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claims, and the Miscarriage of Justice Exception Does Not Apply

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 565 U.S. 266, 280 (2012) (internal quotation marks omitted). "Once cause is proved, a petitioner also must prove prejudice. He must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). For example, procedural default does not preclude federal habeas review when

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 569 U.S. 413, 423 (2013); Martinez v. Ryan, 566 U.S. 1, 12-18 (2012).

Petitioner has presented no justification for failing to raise these claims in his appeal to the Georgia Court of Appeals. Nor has he proved prejudice. Accordingly, Petitioner cannot overcome his procedural default of the claims in Grounds One, Two, Five, Ten, and Twelve.

16

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496. In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." 569 U.S. 383, 394-95 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)).

Petitioner argues a miscarriage of justice occurred because he is actually innocent. (Doc. no. 1.) However, Petitioner does not submit any new evidence showing he is actually innocent of the crimes. "[O]nly provid[ing] new interpretations of existing evidence [is] not . . . a sufficient showing of actual innocence to overcome the procedural default." Claritt v. Kemp, 336 F. App'x 869, 871 (11th Cir. 2009). Indeed, this is because "'actual innocence' means *factual* innocence, not mere legal insufficiency." McKay v. United States, 657 F.3d 1190, 1197 (11th Cir. 2011) (quoting Bousley v. United States, 523 U.S. 614, 623, (1998)); see also Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence"). Consequently, because Petitioner presents no new evidence, he has not shown a miscarriage of justice will occur if the Court does not consider his defaulted claims.

17

### D. Applying AEDPA Deference to Grounds Three and Four Rejected by the State Courts, Federal Habeas Relief Is Not Warranted

The Georgia Supreme Court denied Petitioner's application for writ of certiorari. (Doc. no. 1, p. 2.) Because the denial was not accompanied by reasons, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" when determining, pursuant to 28 U.S.C. § 2254(d), whether the state court decision was reasonable. Wilson v. Sellers, 584 U.S., 138 S. Ct. 1188, 1192 (2018). The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Thus, the Court turns its attention to the Court of Appeals reasoning in its decision. See Wilson, 138 S. Ct. at 1192. As discussed below, the Georgia Court of Appeals court correctly determined Petitioner's Grounds Three and Four are meritless. (Doc. no. 13-1, pp. 5-6, 9.)

#### 1. The Georgia Court of Appeals' Determination as to Ground Three Was Not an Unreasonable Application of Federal Law

In Ground Three, Petitioner asserts the indictment was procedurally deficient because it was forged, not returned in open court, and contains no seal of authenticity. (Id.) The Georgia Court of Appeals rejected this claim, reasoning Petitioner had submitted no evidence to support these allegations, the indictment was facially valid, and the indictment was supported by evidence of procedural sufficiency introduced at the trial court in response to

18

Petitioner's motion for new trial. Hunt, No. A18A0372 at 5-6; (doc. no. 13-1, pp. 5-6.) Petitioner fails to argue, and has not shown, the state court was objectively unreasonable in its determination. Indeed, Petitioner has still failed to produce any evidence in support of his claim.

### 2. The Georgia Court of Appeals' Determination as to Ground Four Was Not an Unreasonable Application of Federal Law

In Ground Four, Petitioner asserts the trial judge violated his due process rights by not granting him access to the personal addresses and phone numbers of the grand jury. (Doc. no. 1, p. 14.) Petitioner claims he needs the testimony of the grand jurors to prove the charges forming his indictment were not actually presented before the grand jury. (Id.) The Georgia Court of Appeals held, "[w]e find nothing in the record to support a claim that the court's ruling violated [Petitioner's] due process rights." Hunt, No. A18A0372 at 5-6; (doc. no. 13-1, pp. 5-6.) Petitioner has failed to show the state court was objectively unreasonable in its determination. There is no right for a defendant to obtain the personal identifying information of grand jury members. Petitioner cites Washington v. Texas, 388 U.S. 14 (1967), but that case concerns compulsory witnesses and accomplice testimony, not grand jury contact information. Accordingly, this claim provides no basis for federal habeas corpus relief.

## IV. LEAVE TO APPEAL *IN FORMA PAUPERIS*

The Court should deny Petitioner leave to appeal *in forma pauperis* ("IFP") and a Certificate of Appealability ("COA"). An appeal cannot be taken IFP if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. See 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A). Thus, because there are no non-frivolous

issues to raise on appeal, an appeal would not be taken in good faith, and the Court should **DENY** Petitioner leave to appeal IFP. See 28 U.S.C. § 1915(a)(3).

Further, a prisoner seeking relief under § 2254 must obtain a COA before appealing the denial of his application for a writ of habeas corpus. The Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) to the Rules Governing Section 2254 Proceedings. The Court should grant a COA only if the prisoner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above in § II supra, and in consideration of the standards enunciated in Slack v. McDaniel, 529 U.S. 473, 482-84 (2000), Petitioner has failed to make the requisite showing. Accordingly, the Court should **DENY** a COA in this case.[1]

## V. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent. The Court further **RECOMMENDS** Petitioner be **DENIED** leave to appeal IFP and a COA.

SO REPORTED and RECOMMENDED this 14th day of April, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] "If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) to the Rules Governing Section 2254 Proceedings.